## IN THE U.S. DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| M.B. BARGE CO., INC. | * | |
| Plaintiff, | * | |
| v. | * | CASE NO. 1:12-cv-00686 |
| KUDZU MARINE, INC., | * | |
| Defendant | * | |

## COMPLAINT

Plaintiff M.B. BARGE CO., INC., a Florida Corporation (hereinafter referred to as M.B. Barge) files this Complaint against KUDZU MARINE, INC., an Alabama Corporation (hereinafter "Kudzu" or "Defendant"), and alleges as follows:

## PARTIES

1.      M.B. Barge Company, Inc., is a Florida Corporation, with its principal place of business located in Escambia County, Florida.

2.      Defendant Kudzu Marine, Inc., is an Alabama Corporation, with its principal place of business located in Mobile County, Alabama.

3.      Plaintiff avers that this Court has personal jurisdiction over the parties, and has subject matter jurisdiction under the General Maritime Law, and also because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

4.     Venue is proper in this Court as the Defendant's principal place of business is located in Mobile County, Alabama, and at all relevant times the Defendant has conducted business with the barges in question within said county.

5.     This complaint alleges breach of contract against Kudzu and failure of Kudzu to fulfill the terms, conditions, and obligations required of it under the Charter Agreements.

## FACTS

6.     M.B. Barge is the owner of two specialty tank transport barges, which it charters/ leases to various transport companies.  These barges are identified as tank barge MB-3 Official Number 288850 and tank barge MB-7 Official Number 299051.

7.     Defendant Kudzu is primarily in the business of transporting fuel for customers, including specialty fuels for ocean-going vessels.

<u>Charter Agreement No. 1 Tank Barge MB-7</u>

8.     On April 15, 2010, Kudzu and M.B. Barge entered into a Bareboat Charter Agreement, for the charter of the Tank Barge MB-7 to Kudzu for its operations.  This charter agreement was for the term of 36 months, commencing upon delivery of the barge on April 30, 2010.  A true and correct copy of this executed Bareboat Charter Agreement is attached hereto as Exhibit A.

9.     Under the terms of this charter agreement, Kudzu agreed to pay charter hire at the rate of $375.00 per day for the charter of the barge, which would be paid monthly on the 15th of

each month.  The charter further provided for the payment of late fees, at a rate of 12% per annum, for any late payments.

10.    Among its many duties under the charter agreement, Kudzu agreed to accept all responsibility for repairs and maintenance of the barge; for obtaining insurance for operation of the barge; and for payment of any taxes or fees arising out of its use, full control and operation of the barge; all as more fully set out in Exhibit A, all terms, conditions and obligations specifically pleaded herein as if copied *in extensio*.

11.    Under the charter, Kudzu agreed that upon default, which Kudzu has done, M.B. Barge would have the right to retake possession of the barge.  However, Kudzu had certain redelivery obligations, including but not limited to redelivery of the barge in a clean and "gas free condition suitable to load any product permitted under the Vessel's U.S. Coast Guard Certificate of Inspection."  Kudzu agreed that it would be responsible for all costs associated with making the barge suitable for redelivery.

12.    Kudzu has failed to make charter payments on the barge in accordance with the Charter Agreement.  Specifically, to date, Kudzu failed to make payments for the months of August, 2012; September, 2012; and October, 2012, and incurred late fees and interest on its payments for July, 2012.

13.    Total past due payments and late charges total $37,515.96.  The full remaining amount to be paid under the charter agreement amounts to an estimated amount of $67,875.00.

14.    M.B. Barge has notified Kudzu on numerous occasions of its past due amounts and demanded full payment, which Kudzu failed to do.

3

15.     M.B. Barge has notified Kudzu of its breach of the Charter Agreement, and demanded compliance with the provisions for redelivery, including the requirement to redeliver the barge in a "gas free condition." Kudzu failed to meet its obligations for redelivery.

16.     Total costs which M.B. Barge will incur to clean and gas free the barge due to the failure of Kudzu to fulfill its obligations for redelivery total $86,873.00.

17.     Kudzu has failed to provide for insurance for the barge in accordance with the Charter Agreement.

18.     Kudzu's breach of the provision regarding insurance has caused and will cause M.B. Barge damages for obtaining replacement insurance on the barge.

Charter Agreement No. 2 Tank Barge MB-3

19.     On December 19, 2011, Kudzu and M.B. Barge entered into a Bareboat Charter Agreement, for the charter of the Tank Barge MB-3 to Kudzu for its operations.  This charter agreement was for the term of 36 months, commencing upon delivery of the barge on December 19, 2011.  A true and correct copy of this executed Bareboat Charter Agreement is attached hereto as Exhibit B.

20.     Under the terms of this charter agreement, Kudzu agreed to pay charter hire at the rate of $550.00 per day for the charter of the barge, which would be paid monthly on the 15th of each month.  The charter further provided for the payment of late fees, at a rate of 12% per annum, for any late payments.

4

21.     Among its many duties under the charter agreement, Kudzu agreed to accept all responsibility for repairs and maintenance of the barge; for obtaining insurance for operation of the barge; and for payment of any taxes or fees arising out of its use, full control and operation of the barge; all as more fully set out in Exhibit B, all terms, conditions and obligations specifically pleaded herein as if coped *in extensio*.

22.     Under the charter, Kudzu agreed that upon default, which Kudzu has done, M.B. Barge would have the right to retake possession of the barge.  However, Kudzu had certain redelivery obligations, including but not limited to redelivery of the barge in a clean and "gas free condition suitable to load #2 diesel." Kudzu agreed that it would be responsible for all costs associated with making the barge suitable for redelivery.

23.     Kudzu has failed to make charter payments on the barge in accordance with the Charter Agreement.  Specifically, to date, Kudzu failed to make payments for the months of August, 2012; September, 2012; and October, 2012, and incurred late fees and interest on its payments for July, 2012.

24.     Total past due payments and late charges total $55,025.54.  The full remaining amount to be paid under the charter agreement amounts to an estimated amount of $428,450.00.

25.     M.B. Barge has notified Kudzu on numerous occasions of its past due amounts and demanded full payment, which Kudzu failed to do.

26.     M.B. Barge has notified Kudzu of its breach of the Charter Agreement, and demanded compliance with the provisions for redelivery, including the requirement to redeliver the barge in a "gas free condition." Kudzu failed to meet its obligations for redelivery.

27.     Total costs which M.B. Barge will incur to clean and gas free the barge due to the failure of Kudzu to fulfill its obligations for redelivery totals $13,445.00.

28.     Kudzu has failed to provide for insurance for the barge, in accordance with the Charter Agreement.

29.     Breach of the provision regarding insurance has caused and will cause M.B. Barge damages for obtaining replacement insurance on the barge.

## COUNT ONE

### (Breach of Contract/Charter Agreement)

30.     M.B. Barge adopts and incorporates by reference the averments contained in Paragraphs 1 through 29 as if fully set out herein.

31.     Pursuant to the charter agreements, there is due and owing from Defendant Kudzu to M.B. Barge past due amounts and future charter payments totaling $105,390.96 for the charter agreement on Vessel MB-7, and $483,475.54 for the full term of the charter agreement on Vessel MB-3, together with attorneys' fees and other costs associated with collecting such amount.

32.     Defendant Kudzu has breached the Charter Agreements by failing to pay said charter fees, provide required insurance, or maintain the barge.  Kudzu has further breached the charter agreements by failing to adhere to the terms of the contract requiring that Kudzu prepare the barges in a "gas free condition" upon redelivery, and by failing to adequately insure the barges.

33.     As a result of Kudzu's breach of these provisions, M.B. Barge has incurred additional costs, expenses and damages, plus attorney fees and costs.

WHEREFORE, M.B. Barge, Inc., demands judgment against Defendant Kudzu Marine, Inc., for all sums owed under the Charter Agreements, including, without limitation, all attorneys' fees and costs, and for further damages incurred due to Kudzu's breach.  M.B. Barge seeks such other, further and additional relief as this Court may deem just and proper.

Respectfully submitted,

ARMBRECHT JACKSON, LLP
Post Office Box 290
Mobile, Alabama 36601
Telephone:    (251) 405-1300
Fax:              (251) 432-6843

By:___/s/ J. Robert Turnipseed_____
        J. ROBERT TURNIPSEED (TURNJ7793)
        jrt@ajlaw.com
        M. KATHLEEN MILLER (MILLM0888)
        mkm@ajlaw.com

Attorneys for M.B. Barge, Inc.

**DEFENDANT TO BE SERVED BY PRIVATE PROCESS SERVER AT THE FOLLOWING ADDRESS:**

Kudzu Marine, Inc.
c/o Michael S. Wilson, Registered Agent
10820 Elysian Circle
Daphne, AL  36526



# BAREBOAT CHARTER AGREEMENT

This Agreement (the "Barge Charter" or "Agreement") made this 15th day of April 2010, by and between **M.B. Barge Company Inc.**, a Florida corporation, having its principal place of business at Pensacola, Florida (hereinafter referred to as "**Owner**") and **Kudzu Marine, Inc.** having its principal place of business at 750F Viaduct Road  Chickasaw, Alabama 36611 (hereinafter referred to as "**Charterer**").

## WITNESSETH:

Upon the terms and conditions hereinafter set forth, **Owner** agrees to and does hereby let, and **Charterer** agrees to and does hereby hire, the following described vessel on a bareboat basis: MB-7, Official Number 299051, (the "Vessel").

## 1.   DELIVERY AND REDELIVERY

Delivery shall be made to **Charterer** at or near Houma, Louisiana.  Redelivery shall be made by **Charterer** to **Owner** at Houma, Louisiana unless the parties mutually agree to another location in as good running order and condition as when received, reasonable wear and tear at redelivery only excepted.

## 2.   WARRANTIES

**Owner** warrants that at the time of delivery of the Vessel to **Charterer**, the Vessel will be free from any liens, attachments or other encumbrance which might operate to interfere with the free use thereof by **Charterer** or interfere with the operation of the Vessel by **Charterer**. **Owner** warrants that it has, as of the delivery date of the Vessel, exercised due diligence to make the Vessel in all respects seaworthy and fit for its

intended and lawful use as a tank barge as allowed under its Certificate of Inspection issued by the U.S. Coast Guard. **Owner** makes no representation or warranty whatsoever as to the suitability or fitness for the service intended of the Vessel, **Charterer** agreeing to accept the Vessel "as is, where is" upon **Charterer's** inspection prior to delivery. However, delivery to and acceptance by the **Charterer** of said Vessel following **Charterer's** inspection shall constitute conclusive evidence that the Vessel is in good condition, seaworthy and fit and proper for the services for which **Charterer** will use the Vessel. The inspection by **Charterer** and the ultimate acceptance of the Vessel by **Charterer** shall constitute an admission of full performance by **Owner** of all of **Owner's** obligations of this Article 2 with respect to delivery, suitability of the Vessel, seaworthiness and intended and lawful use as a tank barge, and shall be deemed conclusive proof that **Owner** has exercised the due diligence required of **Owner** as set out above; thereafter, **Charterer** shall not be entitled to make or assert any claim of any type against **Owner**, the Vessel, or their underwriters for any reason whatsoever, including but not limited to any claim on account of any agreement, representation or warranty, either expressed or implied, with respect to the use, condition, seaworthiness or suitability of the Vessel for the services intended of the Vessel by **Charterer**. It is expressly understood that **Owner** shall not be responsible for any consequential damages as a result of any latent defects existing at the inception of this Barge Charter.

3.     **CHARTER PERIOD**

The Charter shall be for a term of 36 months (1095 days) commencing upon delivery to and acceptance by **Charterer** of the Vessel as evidenced by Exhibit A, "CERTIFICATE OF DELIVERY AND ACCEPTANCE".

-2-

4.    **CHARTER HIRE**

**Charterer** shall pay for the use and hire of said Vessel for the term of the Charter at a rate of $375.00 per day or any portion thereof "Charter Hire". However, if said Vessel is declared an actual, constructive or agreed total loss from any cause whatsoever during the Charter period, the Charter Hire shall cease as of the day of the declaration of actual, constructive or agreed total loss. **Owner** shall invoice **Charterer** monthly in advance. This will be done on the 15th of the prior month of the charter period then due at the rate of $375.00 per day or any portion of a day. Said Charter Hire shall be paid by **Charterer** no later than the 1st day of each month being billed in advance. All payments shall be made in full without deduction of taxes, fees, remittance, exchange, set-off or any charges of any nature whatsoever. Late fees shall be assessed at 12% per annum, or the maximum amount permitted by law, whichever is less, for each day that payment is not received beyond said due date. Any interruptions or delays for any reason or cause whatsoever experienced in the use of the Vessel while in the service of the **Charterer**, other than from a proven breach of this Barge Charter by **Owner**, shall be for **Charterer's** account, and there shall be no suspension, waiving or rebate of Charter Hire during such period. **Charterer** shall have the use of the equipment and appliance on board the Vessel at the time of delivery to **Charterer** without extra hire therefore. **Owner** shall not be responsible for any repairs, maintenance or damages to the Vessel during the charter period, including any normal wear and tear occurring during the charter period. It is agreed and understood that **Charterer** accepts full responsibility to repair, maintain and supply the Vessel as is necessary to **Charterer's** use and operation of the Vessel and in accordance with good and acceptable marine practice and procedures. **Charterer** is to maintain the Vessel's condition, seaworthiness, and suitability for its intended use during the entire charter period. **Charterer** shall not allow any

condition or needed repair or needed maintenance of the Vessel to exist and which would allow the Vessel to deteriorate in any way during the charter period.

**Charterer** shall strictly maintain the exterior coating integrity of the Vessel during the term of the Charter Hire in order to protect the Vessel from unnecessary wastage of the Vessel's steel thickness. All hatches shall be kept sealed so as not to allow salt water to enter the wing tanks, rake voids, or cargo tanks. Prior to delivery of the Vessel to **Charterer, Owner,** at its cost, will recoat the expansion trunk top and forward deck area with black epoxy per PPG paint specifications and to **Charterer's** satisfaction. Prior to redelivery of Vessel to **Owner, Charterer,** at its cost, will recoat the expansion trunk top and forward deck area with deck red epoxy per PPG paint specifications and to **Owner's** satisfaction.

**Charterer** assumes all risks of total or constructive total loss of the Vessel for the period commencing upon **Charterer** taking delivery of the Vessel until redelivery. In the event of such loss, as defined in the hull policy, **Charterer** agrees to pay **Owner** the stipulated loss value for the Vessel($850,000.00), and Charter Hire shall terminate on the date of the declared total loss only if the stipulated agreed value of the Vessel is paid to **Owner** within forty five (45) days of the date of the declared loss; otherwise, Charter Hire will be owed from the date of the declared loss and will continue until the agreed value of the Vessel is paid to **Owner.** In the event of damage, rather than a total or constructive total loss, **Charterer** agrees, prior to redelivery, to repair the Vessel or, at **Owner's** option, to pay **to Owner** the amount of agreed damages to the **Vessel.**

-4-

5.    USE

The Vessel shall be used by **Charterer** for lawful purposes only and in the usual and ordinary course of **Charterer**'s business but always in accordance with any and all lawful uses including but not limited to the governmental regulations of the U.S. Coast Guard and the Vessel's Certificate of Inspection and within the navigational limits allowed in the insurance coverages provided by **Charterer** for the Vessel.

6.    REPAIRS

As set out above and throughout this Agreement, **Charterer** shall, at its own expense, totally and completely, insure, maintain, repair, renew, navigate, operate, man, vitual, fuel, and supply the Vessel.  **Charterer** shall pay all port charges, towage, pilotage and each and every other expense and cost of any nature or form, incident to the use and operation of the Vessel during the existence of the charter under this Agreement.  **Charterer** shall not make any modifications to the Vessel without the express written consent of **Owner,** but any such modifications that are allowable shall not impair the seaworthiness of the Vessel.  Any modifications that are allowable and made shall be removed, if requested by **Owner,** at **Charterer's** costs prior to redelivery, and Vessel returned to the same condition as at the time of delivery to **Charterer,** normal wear and tear excepted.  **Charterer** acknowledges that during the term of this Bareboat Charter Agreement, it shall maintain the Vessel in accordance with all United States Coast Guard and other federal, state or local regulations, laws, rules and requirements, at its sole cost and expense, and shall insure that all necessary licenses and certificates for any and all trades in which the Vessel is engaged during the term of this Bareboat

-5-

Charter Agreement are obtained and maintained, and shall pay any and all fines or penalties levied against the Vessel by any governmental authority if due to the actions or inactions of the **Charterer.**

## 7. INSPECTION

On-Charter Survey costs while afloat to be shared equally between the Parties. Off-Charter Survey on dry dock and all related costs incurred to effect redelivery to **Owner** shall be for the account of **Charterer** unless other terms are mutually agreed upon between the Parties. In addition to any other terms, conditions and obligations of **Charterer** pertaining to redelivery and Charter Hire set out in this Agreement, it is further agreed upon between the Parties that Charter Hire shall continue (1) during the Off-Charter survey, and, (2) during the time that the Vessel is undergoing any repairs that may have to be performed by **Charterer,** and, (3) should the Vessel have to be taken back by **Owner** for any reason whatsoever, including but not limited to breach or default of Agreement, bankruptcy matters, etc. The Parties agree and understand that the continuation of Charter Hire is to continue until the Vessel is finally delivered by **Charterer to Owner** in full accordance with the terms and conditions of this Agreement and in a condition acceptable to **Owner** for **Owner's** desired use on the open market. **Owner** shall have the right to board and inspect the Vessel at any time with reasonable notice being given to **Charterer.**

## 8. TAXES AND FEES

**Charterer** shall pay all taxes, fees, expenses, and other governmental charges in any way applicable to **Charterer's** control, use and operation of the Vessel, including, but not limited to,

-6-

any transportation, use, sales, excise, or other taxes, and any and all fees or penalties, including the cost of United States Coast Guard inspections, arising out of the control, use and operation of the Vessel during the term of this Bareboat Charter Agreement. **Charterer** shall hold harmless and fully indemnify **Owner** from any lien, claim, levy, penalty, or charge made against **Owner** or the Vessel due to the operation of the Vessel by **Charterer,** including but not limited to those related to all such taxes, fees and expenses, governmental charges or other costs associated with the control, use and operation of the Vessel during the term of this Agreement.

9.     **INSURANCE**

At all times during the initial term and any extensions that the parties may make to this Bareboat Charter Agreement, **Charterer**, at is sole expense, shall maintain the following insurance coverage in the minimum amounts specified below and with underwriters, terms and conditions acceptable to **Owner:**

     (a)     Hull and Machinery Insurance and/or self-insurance (all or a portion) subject to the terms and conditions of the Taylor Hull Form 1953 (Rev. 70) or its equivalent including Strikes, Riots and Civil Commotions Endorsement in the amount of Eight Hundred Fifty Thousand and No/100 ($850,000.00) Dollars, which is the agreed value of the Vessel between the **Owner** and **Charterer**. Deductibles are not to exceed $25,000.00.

     (b)     Protection and Indemnity Insurance, including Collision Liability, Cargo Legal Liability, Contractual Liability and Pollution Buy-Back Endorsement subject to the terms and conditions of not less than the P&I SP-23 (Revised 1/56) form of policy or its equivalent. Deductibles are not to exceed $25,000.00.

-7-

(c)    Pollution Insurance subject to the full limits and conditions available through the Water Quality Insurance Syndicate or its equivalent including Federal and State Fines and Penalties, Broader In Scope State, OPA and CERCLA coverage.

(d)    **Charterer** shall procure and maintain, at its sole cost and expense, all necessary and adequate statutory worker's compensation insurance coverages, including, but not limited to, Longshore and Harbor Workers' Compensation and State Worker's Compensation coverages and any liability under the Jones Act, 46 U.S.C. § 688, if such coverage is not included under other policies of insurance required herein.

(e)    **Charterer** shall procure and maintain, at its sole cost, comprehensive general liability insurance including products and complete operations and contractual liability coverage in an amount not less than $10,000,000.00

(f)    Excess Pollution and Indemnity and Pollution Insurance over items (b) and (c) above (excluding Federal and State Fines and Penalties) providing a limit of liability of not less than One Hundred Million and No/100 ($100,000,000.00) Dollars, it being understood such limits may be in any combination of primary and excess coverage.

(g)    It is expressly agreed by **Charterer** that, if for any reason, it should fail to procure, pay for, maintain or comply with any of the insurance requirements, or commit any act or omission which results in voiding or vitiating the insurance coverage required herein, or if claims, losses or damages are asserted for which no reimbursement or incomplete reimbursement is forthcoming from insurance underwriters, then in any such event **Charterer** agrees to hold harmless and

indemnify **Owner** and **Owners Group**(as hereinafter defined) from such claims, losses or damages to the same extent that the insurance required above would have afforded protection to **Owner** and **Owners Group** had the policies of insurance been in full force and effect.

(h)     Specifically, any and all references to insurance or policies of insurance includes any and all deductibles/self-insurance coverages **Charterer** elects to provide; and, **Charterer** shall inform **Owner** through a certificate of insurance as to what coverages are self-insured, the amount and that all naming, waiving and other requirements or obligations imposed on any policy and/or insurer are also imposed on **Charterer** as a self-insured.

(i)     The Vessel shall be listed as a scheduled Vessel in all insurance policies of **Charterer**, including **Charterer's** Hull and Pollution policies.

(j)     All policies described in subparagraphs (a) through (f) above, where lawful to do so, shall name **Owner** and **Owners Group** as a named assured with a full waiver of subrogation, and that **Owner** and **Owners Group** retain the right to bring a claim against any insurer of **Charterer**. The **Charterer's** obligations of naming and waiving **Owner** and **Owners Group** shall also apply to any self-insurance or self retention of **Charterer**.  The liability policies shall contain an "in rem" endorsement. **Owner** shall be a joint loss payee with **Charterer** on any Hull claims exceeding $25,000.00.  **Owner** shall be the sole loss payee on an actual or constructive total loss claim under the Hull policy.  Certificates of Insurance of all required coverage shall be furnished to **Owner** prior to the commencement of this

-9-

Agreement and any renewals thereof.  **Owner** shall be provided with not less than thirty (30) days prior written notice of cancellation or material change (except ten (10) days notice shall be given in the event of non payment of premium) of any insurance coverages while this Agreement exists between the parties.

(k)     Any and all deductibles, self-insured retentions and premiums shall be for the sole account of **Charterer** with respect to all required insurance.

(l)     The above insurance shall be considered as primary to any other insurance carried by **Owner** and **Owners Group** and any insurance carried by **Owner** and **Owners Group** shall be noncontributing under any circumstances.

## 10.    CARGOES

The Vessel is not to be loaded with a leaded product or a Class B poison.  The Vessel shall only be loaded with approved cargos according to the Vessel's U.S.C.G. Certificate of Inspection.

## 11.    LIENS

**Charterer** shall not allow any liens of any type to be placed on the Vessel and shall properly post notices on the Vessel that no person, party, entity or vendor shall have the privilege or ability to place or create a lien on the Vessel; and **Charterer** shall notify each person, party, entity or vendor of the lien prohibition. **Charterer** shall, in the use, operations, including, but not limited to, the applicable rules, orders, regulations, directives and requirements of any department, commission, bureau or agency having authority over **Owner**, the Vessel, **Charterer** or its operations, including "Homeland Security" rules, regulations and laws. **Charterer** shall protect, defend, indemnify and hold harmless **Owner**, **Owners Group**, the Vessel and their

-10-

Insurers against all libels, maritime liens, liens, claims, charges, encumbrances, lawsuits, fines, penalties or claims of any type whatsoever which may be imposed upon or filed against **Owner, Owners Group,** the Vessel or their Insurers, including but not limited to those liens or encumbrances set out in this Paragraph 11 or pursuant to any laws, rules, orders, regulations, directives or requirements which may arise due to the use, operation or navigation of the Vessel by **Charterer** under the terms of this Agreement.

Neither **Charterer** or its Parent and the related, affiliated, subsidiary or associated companies or contractors or subcontractors of any tier, vendors of each or any of their officers, representatives, invitees, employees, or agents, the Master or any other officer or member of the crew of their vessels, any representative or anyone acting on their behalf ("**Charterer Group**") shall have any rights, power or authority to create, incur, suffer or permit to be placed or imposed upon the Vessel any maritime or other lien, encumbrance or charge whatsoever or to incur debt, obligation or charge upon the credit of the Vessel. In the event, notwithstanding the foregoing, that a maritime or other lien, encumbrance or charge shall be placed upon the Vessel during the term of this Bareboat Charter Agreement, or after redelivery, or in the event the Vessel shall be levied against or taken into custody by virtue of any legal proceedings in any court, based up a claim or cause of action, valid or invalid, founded or unfounded, alleged to have arisen during the term of this Agreement, **Charterer** shall, within seventy-two (72) hours, cause the Vessel to be released and/or the asserted claim, liable, lawsuit, maritime or other lien, encumbrances or charges brought against **Owner,** Vessel or their Insurers be discharged. **Charterer** also agrees to protect, defend, indemnify and hold harmless **Owner,** Vessel, **Owners Group** and their Insurers from and against any such asserted claims, libel, lawsuit, maritime or other lien, encumbrances or charges brought against **Owner,** Vessel or their Insurers. **Charterer** shall inform all third

-11-

parties of this "lien prohibition" and protect **Owner** and **Owners Group** and Vessel in that regard.

## 12.   INDEMNITY

**Charterer** agrees to protect, defend, indemnify and hold harmless **Owner**, its contractors and subcontractors of all tiers, their officers, agents, shareholders, employees, invitees, representatives, subsidiary, affiliated and related companies and the Vessel and the insurers of all (**Owners Group**) from and against any and all claims, demands or causes of action, including but not limited to personal injury or death of any employees, invitees, agents or representatives of **Charterer** (including **Charterer's** subsidiary, affiliated and related companies), its contractors and subcontractors of all tiers and third party towers and any other third party or person(**"Charterers Group"**) and any and all property damage (including damage to Vessel), cargo, pollution or environmental damages or losses of any person, party or vessel, including but not limited to **Charterers Group,** and regardless of whether or not any such claims, demands or causes of action shall arise from or be caused by, in whole or in part, the sole or partial negligence or fault of **Owners Group**, strict liability or unseaworthiness of Vessel.

## 13.   FINANCIAL RESPONSIBILITY

**Charterer** shall procure evidence of financial responsibility demonstrating **Charterer's** ability to meet the liability to the United States of America and the separate states thereof which may result from the discharge of pollutants into or upon the navigable waters or air of the United States, adjoining shoreline or into or upon the waters or lands of the contiguous zone. Notwithstanding any other terms, conditions or exceptions contained in this Bareboat Charter Agreement, **Charterer** agrees that for the duration of or even after the termination of this

-12-

Bareboat Charter Agreement, it shall be deemed the operator of the Vessel for the purposes of compliance with all pollution regulations during its charter of the Vessel and further agrees to save and hold harmless and indemnify **Owner** and **Owners Group** against any and all loss due to any and all civil fines, claims, cleanup, proceedings or actions with respect to said pollution regulations brought about from use of the Vessel during the Charter period(s).

**Charterer** is mindful of OPA 90 and the responsibilities and obligations that might be imposed on **Owner** as the **Owner** of the Vessel and should there be a spill or environmental discharge for any reason from the Vessel during the operation and use of the barge by **Charterer** during the Charter period, **Charterer** accepts responsibility for all costs and expenses incurred by **Owner** and **Owners Group** to contain or clean up the spill or environmental discharge and **Charterer** further accepts responsibility for third party damages caused by any spill or environmental discharge during its operation and use of the Vessel pursuant to this Barge Charter Agreement. **Charterer** shall indemnify and reimburse **Owner** for any funds and expenses expended by **Owner** and **Owners Group** as a result of a spill or environmental discharge while **Charterer** is operating or using this Vessel pursuant to this Agreement. **Charterer** shall indemnify and reimburse **Owner** and **Owners Group** for any funds and expenses expended by **Owner** and **Owners Group** as a result of a spill or environmental discharge while **Charterer** is operating or using this Vessel pursuant to this Agreement, even if alleged or caused in whole or in part, due to any negligence or fault of **Owner** and **Owners Group,** strict liability or unseaworthiness of Vessel.

-13-

## 14.   CLEANING

This Vessel shall be presented suitable to load lube stock petroleum products.   Vessel to be redelivered to **Owner** in a gas free condition suitable to load any product permitted under the Vessel's U.S. Coast Guard Certificate of Inspection.   Suitability at redelivery to be determined by an independent cargo inspector acceptable to both parties and should a dispute arise, all costs to be for the account of **Charterer**, both the expert costs and the cost to make the Vessel suitable for redelivery and Charter Hire will continue until Vessel is suitable for redelivery.

## 15.   QUIET ENJOYMENT

**Owner** agrees that it shall not allow, suffer or permit to be imposed on the Vessel any lien or charge which in any way interferes with the rights of **Charterer** under this Agreement.

## 16.   SEVERABILITY

In the event that any provision of this Agreement shall be deemed or found to be invalid, void or unenforceable, such finding shall be construed to render any other provision of this Agreement either invalid, void or unenforceable, and all other provisions shall remain in full force and effect unless the provisions which are invalid, void or unenforceable shall substantially affect the rights or obligations granted to or undertaken by either party.   Should this Agreement be found or deemed invalid, void or unenforceable for any reason whatsoever then this Agreement shall terminate at that time, the Vessel shall be redelivered to the **Owner** and neither party shall have any obligation to perform in the future under this Agreement but **Charterer** shall still remain responsible for Vessel Charter Hire, repair of damages, re-delivery obligations and whatever future obligations **Charterer** may have to **Owner** under this Agreement.

-14-

## 17.    ASSIGNMENT

Neither **Charterer** nor **Owner** shall have the right to assign this Bareboat Charter to any other individual, company or entity without first obtaining the written approval of the other party.

## 18.    NOTICE OF DEFAULT

If at any time after the delivery of said Vessel to **Charterer** hereunder, **Charterer** shall default in the payment of Charter Hire or fail to perform any of the duties or obligations assumed hereunder, or violate any of the provisions of this Agreement or file for Chapter 11 or Chapter 7 of the Bankruptcy laws, or if **Charterer** shall be adjudged a bankrupt or have filed a Petition in bankruptcy against it, **Charterer** shall be considered to be in breach of and in default of the Agreement and **Owner** may, without prejudice to any other rights it may have under this Agreement, including the right to enforce any legal rights it may have under this Agreement, cancel this Agreement and withdraw and retake the Vessel, wherever same may be found, whether on the high seas or in any port, harbor or other place, and without prior demand and without legal process, and for that purpose Owner may enter upon any dock, pier or other premises where the Vessel may be  and may take possession thereof; further, regardless of the actions taken by **Owner, Owner** will maintain any and all rights or causes of action it may have against **Charterer** under the terms, conditions and obligations, imposed upon **Charterer** in this Agreement.

## 19.    THIRD PARTY TOWERS, ETC.

**Charterer** shall cause and does warrant that all third party towers, contractors or subcontractors will name and waive **Owner** and **Owners Group** and the Vessel in their policies of insurance —

-15-

all deductibles for the account of third party. **Charterer** shall have any aforementioned third party accept and be bound by the terms and conditions of this Agreement.

## 20.   GOVERNING LAW

This Barge Charter Agreement and the rights and obligations of the Parties hereunder shall be construed in accordance with and be governed by the General Maritime law of the United States and if not under the General Maritime law, then under the laws of the State of Louisiana.

## 21.   ATTORNEY FEES

Should any party to this Agreement have to retain an attorney to enforce any of its rights against any other party for breach of obligations under this Agreement, the prevailing party shall be entitled to reasonable attorney fees and costs against the party or parties in breach.

**M.B. BARGE COMPANY, INC.**

By_____
Its Authorized Representative
Name: CHRIS GONZALEZ

Title: PRESIDENT

Date: 4/15/10

**KUDZU MARINE, INC.**

By_____
Its Authorized Representative
Name: MICHAEL S. WILSON

Title: President

Date: 4/15/10

BAREBOAT CHARTER Kudzu452010.doc

## EXHIBIT A

## CERTIFICATE OF DELIVERY AND ACCEPTANCE

M.B. Barge Company, Inc., a Florida corporation, hereinafter called "Owner", and Kudzu Marine, Inc., hereinafter called "Charterer",

## DO HEREBY CERTIFY

(1)   that at _____ 00:01 _____ hours CST, on the _____ 30th _____ day of _____ April _____, 2010 which such vessel was afloat at _Diversified Industries, Boug, La._, and Owner delivered and Charterer accepted from Owner the tank barge MB-7, Official No. 299051, hereinafter called the "Vessel",  pursuant to the terms, conditions and obligations of the BAREBOAT CHARTER AGREEMENT, dated _____ April 15, _____ 2010.

For the Owner:

By: _Chris Gonsoulin_

Chris Gonsoulin, President
Its Duly Authorized Representative

M.B. Barge Company, Inc.

By: _R.J. Langfair, Jr._

Witness Name:

For the Charterer:

By: _Michael S. Wilson_

Its Duly Authorized Representative

Name: _MICHAEL S. WILSON_

Title: _PRESIDENT_

Kudzu Marine, Inc.

By: _____

Witness Name: _R.J. Langfair_



EXHIBIT

B

## BAREBOAT CHARTER AGREEMENT

This Agreement (the "Barge Charter" or "Agreement") made this _____19th_____ day of December 2011, by and between **M.B. Barge Company Inc. ,** a Florida corporation, having its principal place of business at Pensacola, Florida (hereinafter referred to as **"Owner"**) and **Kudzu Marine, Inc.** having its principal place of business at 750F Viaduct Road, Chickasaw, Al. 36611 (hereinafter referred to as **"Charterer"**).

### WITNESSETH:

Upon the terms and conditions hereinafter set forth, **Owner** agrees to and does hereby let, and **Charterer** agrees to and does hereby hire, the following described **Vessel** on a bareboat basis: **MB-3** Official Number 288850, (the **"Vessel"**).

**1.     DELIVERY AND REDELIVERY**

Delivery shall be made to **Charterer** at or near Mobile, Alabama. Redelivery shall be made by **Charterer** to **Owner** at Bourg, Louisiana unless the parties mutually agree to another location in as good running order and condition as when received, reasonable wear and tear at redelivery only excepted. Reasonable notice from **Charterer to Owner** regarding redelivery will be provided.

**2.     WARRANTIES**

**Owner** warrants that at the time of delivery of the **Vessel** to **Charterer**, the Vessel will be free from any liens, attachments or other encumbrance which might operate to interfere with the free use thereof by **Charterer** or interfere with the operation of the **Vessel** by **Charterer**. **Owner** warrants that it has, as of the delivery date of the **Vessel**, exercised due diligence to make the **Vessel** in all respects seaworthy and fit for its intended and lawful use as a tank barge as allowed under its Certificate of Inspection issued by the U.S. Coast Guard. **Owner** makes no representation or warranty whatsoever as to the suitability or fitness for the service intended of the **Vessel**, **Charterer** agreeing to accept the **Vessel** "as is, where is" upon **Charterer's** inspection prior to delivery. However, delivery to and acceptance by the **Charterer** of said **Vessel** following **Charterer's** inspection shall constitute conclusive evidence that the **Vessel** is in good condition, seaworthy and fit and proper for the services for which **Charterer** will use the **Vessel**. The

inspection by **Charterer** and the ultimate acceptance of the **Vessel** by **Charterer** shall constitute an admission of full performance by **Owner** of all of **Owner's** obligations of this Article 2 with respect to delivery, suitability of the **Vessel**, seaworthiness and intended and lawful use as a tank barge, and shall be deemed conclusive proof that **Owner** has exercised the due diligence required of **Owner** as set out above; thereafter, **Charterer** shall not be entitled to make or assert any claim of any type against **Owner**, the **Vessel**, or their underwriters for any reason whatsoever, including but not limited to any claim on account of any agreement, representation or warranty, either expressed or implied, with respect to the use, condition, seaworthiness or suitability of the **Vessel** for the services intended of the **Vessel** by **Charterer**. It is expressly understood that **Owner** shall not be responsible for any consequential damages as a result of any latent defects existing at the inception of this Barge Charter.

3.   **CHARTER PERIOD**

The Charter shall be for a term of 36 months commencing upon delivery to and acceptance by **Charterer** of the **Vessel** as evidenced by Exhibit A, "CERTIFICATE OF DELIVERY AND ACCEPTANCE".

4.   **CHARTER HIRE**

**Charterer** shall pay for the use and hire of said **Vessel** for the term of the Charter at a rate of $550.00 per day or any portion of a day, "Charter Hire". However, if said **Vessel** is declared an actual, constructive or agreed total loss from any cause whatsoever during the Charter period, the Charter Hire shall cease as of the day of the declaration of actual, constructive or agreed total loss. **Owner** shall invoice **Charterer** monthly in advance on the 15th of the prior month of the charter period then due and **Owner** shall be paid monthly in advance on the 1st day of each month for the Charter Hire then due. All payments shall be made in full without deduction of taxes, fees, remittance, exchange, set-off or any charges of any nature whatsoever.  Late fees shall be assessed at 12% per annum, or the maximum amount permitted by law, whichever is less, for each day that payment is not received beyond said due date.  Any interruptions or delays for any reason or cause whatsoever experienced in the use of the **Vessel** while in the service of the **Charterer**, other than from a proven breach of this Barge Charter by **Owner**, shall be for **Charterer's** account, and there shall be no suspension, waiving or rebate of Charter Hire during such period.  **Charterer** shall have the use of the equipment and appliance on board the **Vessel** at the time of delivery to **Charterer** without extra

hire therefore. **Owner** shall not be responsible for any repairs, maintenance or damages to the **Vessel** during the charter period, including any normal wear and tear occurring during the charter period. It is agreed and understood that **Charterer** accepts full responsibility to repair, maintain and supply the **Vessel** as is necessary to **Charterer's** use and operation of the **Vessel** and in accordance with good and acceptable marine practice and procedures. **Charterer** is to maintain the **Vessel's** condition, seaworthiness, and suitability for its intended use during the entire charter period. **Charterer** shall not allow any condition or needed repair or needed maintenance of the **Vessel** to exist and which would allow the to deteriorate in any way during the charter period.

**Charterer** shall strictly maintain the exterior coating integrity of the **Vessel** during the term of the Charter Hire in order to protect the **Vessel** from unnecessary wastage of the **Vessel's** steel thickness. All hatches shall be kept sealed so as not to allow salt water to enter the wing tanks, rake voids, or cargo tanks.

**Charterer** assumes all risks of total or constructive total loss of the **Vessel** for the period commencing upon **Charterer** taking delivery of the **Vessel** until redelivery. In the event of such loss, as defined in the hull policy, **Charterer** agrees to pay **Owner** the stipulated loss value for the **Vessel**($750,000.00), and Charter Hire shall terminate on the date of the declared total loss only if the stipulated agreed value of the **Vessel** is paid to **Owner** within forty five (45) days of the date of the declared loss; otherwise, Charter Hire will be owed from the date of the declared loss and will continue until the agreed value of the **Vessel** is paid to **Owner**. In the event of damage, rather than a total or constructive total loss, **Charterer** agrees, prior to redelivery, to repair the **Vessel** or, at **Owner's** option, to pay **to Owner** the amount of agreed damages to the **Vessel**.

**5. USE**

The **Vessel** shall be used by **Charterer** for lawful purposes only and in the usual and ordinary course of **Charterer's** business but always in accordance with any and all lawful uses including but not limited to the governmental regulations of the U.S. Coast Guard and the **Vessel's** Certificate of Inspection and within the navigational limits allowed in the insurance coverages provided by **Charterer** for the **Vessel**.

6.   **REPAIRS**

As set out above and throughout this Agreement, **Charterer** shall, at its own expense, totally and completely, insure, maintain, repair, renew, navigate, operate, man, vitual, fuel, and supply the **Vessel**. **Charterer** shall pay all port charges, towage, pilotage and each and every other expense and cost of any nature or form, incident to the use and operation of the **Vessel** during the existence of the charter under this Agreement. **Charterer** shall not make any modifications to the **Vessel** without the express written consent of **Owner**, but any such modifications that are allowable shall not impair the seaworthiness of the **Vessel**. Any modifications that are allowable and made shall be removed, if requested by **Owner**, at **Charterer's** costs prior to redelivery, and **Vessel** returned to the same condition as at the time of delivery to **Charterer**, normal wear and tear excepted. **Charterer** acknowledges that during the term of this Bareboat Charter Agreement, it shall maintain the **Vessel** in accordance with all United States Coast Guard and other federal, state or local regulations, laws, rules and requirements, at its sole cost and expense, and shall insure that all necessary licenses and certificates for any and all trades in which the **Vessel** is engaged during the term of this Bareboat Charter Agreement are obtained  and maintained, and shall pay any and all fines or penalties levied against the **Vessel** by any governmental authority if due to the actions or inactions of the **Charterer.**

**7. INSPECTION**

On-Charter Survey costs while afloat to be shared equally between the Parties. Off-Charter Survey on dry dock and all related costs incurred to effect redelivery to **Owner** shall be for the account of **Charterer** unless other terms are mutually agreed upon between the Parties. In addition to any other terms, conditions and obligations of **Charterer** pertaining to redelivery and Charter Hire set out in this Agreement, it is further agreed upon between the Parties that Charter Hire shall continue (1) during the Off-Charter survey, and, (2) during the time that the **Vessel** is undergoing any repairs that may have to be performed by **Charterer,**  and, (3) should the **Vessel** have to be taken back by **Owner** for any reason whatsoever, including but not limited to breach or default of Agreement, bankruptcy matters, etc. The Parties agree and understand that the continuation of Charter Hire is to continue until the **Vessel** is finally delivered by **Charterer** to **Owner** in full accordance with the terms and conditions of this Agreement and in a

condition acceptable to **Owner** for **Owner's** desired use on the open market. **Owner** shall have the right to board and inspect the **Vessel** at any time with reasonable notice being given to **Charterer**.

## 8. TAXES AND FEES

**Charterer** shall pay all taxes, fees, expenses, and other governmental charges in any way applicable to **Charterer's** control, use and operation of the **Vessel**, including, but not limited to, any transportation, use, sales, excise, or other taxes, and any and all fees or penalties, including the cost of United States Coast Guard inspections, arising out of the control, use and operation of the **Vessel** during the term of this Bareboat Charter Agreement. **Charterer** shall hold harmless and fully indemnify **Owner** from any lien, claim, levy, penalty, or charge made against **Owner** or the **Vessel** due to the operation of the **Vessel** by **Charterer,** including but not limited to those related to all such taxes, fees and expenses, governmental charges or other costs associated with the control, use and operation of the **Vessel** during the term of this Agreement.

## 9.   INSURANCE

At all times during the initial term and any extensions that the parties may make to this Bareboat Charter Agreement, **Charterer**, at its sole cost and expense, shall procure and maintain the following insurance coverage in the minimum amounts specified below and with underwriters, terms and conditions acceptable to **Owner:**

(a) Hull and Machinery Insurance and/or self-insurance (all or a portion) subject to the terms and conditions of the Taylor Hull Form 1953 (Rev. 70) or its equivalent including Strikes, Riots and Civil Commotions Endorsement in the amount of ($750,000.00) Dollars, which is the agreed value of the **Vessel** between the **Owner** and **Charterer**. Deductibles are not to exceed $25,000.00. Such coverage shall include a Breach of Warranty provision in favor of **Owner.**

(b)    Protection and Indemnity Insurance, including Collision Liability, Cargo Legal Liability, Contractual Liability and Pollution Buy-Back Endorsement subject to the terms and conditions of not less than the P&I SP-23 (Revised 1/56) form of policy or its equivalent. Deductibles are not to exceed $25,000.00.

(c)    Pollution Insurance subject to the full limits and conditions available through the Water Quality Insurance Syndicate or its equivalent including Federal and State Fines and Penalties, Broader In Scope State, OPA and CERCLA coverage.

(d)    All necessary and adequate statutory worker's compensation insurance, including, but not limited to Employers's Liability and  Longshore and Harbor Workers' Compensation and State Worker's Compensation coverages and any liability under the Jones Act, 46 U.S.C. § 688, if such coverage is not included under other policies of insurance required herein.

(e)    Comprehensive general liability insurance including products and complete operations and contractual liability coverage.

(f)    Excess Protection and Indemnity, and Pollution, Employer's Liability and General Liability Insurance over items (b) through (e) above (excluding Federal and State Fines and Penalties) providing a limit of liability of not less than One Hundred Million and No/100 ($100,000,000.00) Dollars, it being understood such limits may be in any combination of primary and excess coverage.

(g)    Cargo Insurance on any cargo transported by the **Vessel** to the full extent and limits required by contract or agreement.

(h)    It is expressly agreed by **Charterer** that, if for any reason, it should fail to procure, pay for, maintain or comply with any of the insurance requirements, or commit any act or omission which results in voiding or vitiating the insurance coverage required herein, or if claims, losses or damages are asserted for which no reimbursement or incomplete reimbursement is forthcoming from insurance underwriters, then in any such event **Charterer** agrees to hold harmless and

indemnify **Owner** and **Owners Group**(as hereinafter defined) from such claims, losses or damages to the same extent that the insurance required above would have afforded protection to **Owner** and **Owners Group** had the policies of insurance been in full force and effect.

(i) Specifically, any and all references to insurance or policies of insurance includes any and all deductibles/self-insurance coverages **Charterer** elects to provide; and, **Charterer** shall inform **Owner** through a certificate of insurance as to what coverages are self-insured, the amount and that all naming, waiving and other requirements or obligations imposed on any policy and/or insurer are also imposed on **Charterer** as a self-insured.

(j) The **Vessel** shall be listed as a scheduled **Vessel** in all the Hull, P&I, Pollution and Excess insurance policies of **Charterer.**

(k) All policies described in subparagraphs (a) through (f) above, where lawful to do so, shall name **Owner** and **Owners Group** as a named assured with a full waiver of subrogation, and that **Owner** and **Owners Group** retain the right to bring a claim against any insurer of **Charterer.** The **Charterer's** obligations of naming and waiving **Owner** and **Owners Group** shall also apply to any self-insurance or self retention of **Charterer.** The liability policies shall contain an "in rem" endorsement. **Owner** shall be a joint loss payee with **Charterer** on any Hull claims exceeding $25,000.00. **Owner** shall be the sole loss payee on an actual or constructive total loss claim under the Hull policy. Certificates of Insurance of all required coverage shall be furnished to **Owner** prior to the commencement of this Agreement and any renewals thereof. **Owner** shall be provided certified copies of all policies if requested by **Owner. Owner** shall be provided with not less than thirty (30) days prior written notice of cancellation or material change (except ten (10) days notice shall be given in the event of non payment of premium) of any insurance coverages while this Agreement exists between the parties.

(l) Any and all deductibles, self-insured retentions and premiums shall be for the sole account of **Charterer** with respect to all required insurance.

(m)   The above insurance shall be considered as primary to any other insurance carried by **Owner** and **Owners Group** and any insurance carried by **Owner** and **Owners Group** shall be noncontributing under any circumstances.

## 10.   CARGOES

The **Vessel** is not to be loaded with a leaded product or a Class B poison.  The **Vessel** shall only be loaded with approved cargos according to the **Vessel's** U.S.C.G. Certificate of Inspection.

## 11.   LIENS

**Charterer** shall not allow any liens of any type to be placed on the **Vessel** and shall properly post notices on the **Vessel** that no person, party, entity or vendor shall have the privilege or ability to place or create a lien on the **Vessel**; and **Charterer** shall notify each person, party, entity or vendor of the lien prohibition. **Charterer** shall, in the use, operations, including, but not limited to, the applicable rules, orders, regulations, directives and requirements of any department, commission, bureau or agency having authority over **Owner**, the **Vessel**, **Charterer** or its operations, including "Homeland Security" rules, regulations and laws. **Charterer** shall protect, defend, indemnify and hold harmless **Owner**, **Owners Group**, the **Vessel** and their Insurers against all libels, maritime liens, liens, claims, charges, encumbrances, lawsuits, fines, penalties or claims of any type whatsoever which may be imposed upon or filed against **Owner**, **Owners Group**, the **Vessel** or their Insurers, including but not limited to those liens or encumbrances set out in this Paragraph 11 or pursuant to any laws, rules, orders, regulations, directives or requirements which may arise due to the use, operation or navigation of the **Vessel** by **Charterer** under the terms of this Agreement.

Neither **Charterer** or its Parent and the related, affiliated, subsidiary or associated companies or contractors or subcontractors of any tier, vendors of each or any of their officers, representatives, invitees, employees, or agents, the Master or any other officer or member of the crew of their vessels, any representative or anyone acting on their behalf ("**Charterer Group**") shall have any rights, power or authority to create, incur, suffer or permit to be placed or imposed upon the **Vessel** any maritime or other lien, encumbrance or charge whatsoever or to incur debt, obligation or charge upon the credit of the **Vessel**.  In the event, notwithstanding the foregoing, that a maritime or other lien, encumbrance or charge  shall be placed upon the **Vessel** during the term of this Bareboat Charter

Agreement, or after redelivery, or in the event the **Vessel** shall be levied against or taken into custody by virtue of any legal proceedings in any court, based upon a claim or cause of action, valid or invalid, founded or unfounded, alleged to have arisen during the term of this Agreement, **Charterer** shall, within seventy-two (72) hours, cause the **Vessel** to be released and/or the asserted claim, liable, lawsuit, maritime or other lien, encumbrances or charges brought against **Owner, Vessel** or their Insurers be discharged. **Charterer** also agrees to protect, defend, indemnify and hold harmless **Owner, Vessel, Owners Group** and their Insurers from and against any such asserted claims, libel, lawsuit, maritime or other lien, encumbrances or charges brought against **Owner, Vessel** or their Insurers. **Charterer** shall inform all third parties of this "lien prohibition" and protect **Owner** and **Owners Group** and **Vessel** in that regard.

## 12.   INDEMNITY

**Charterer** agrees to protect, defend, indemnify and hold harmless **Owner**, its contractors and subcontractors of all tiers, their officers, agents, shareholders, employees, invitees, representatives, subsidiary, affiliated and related companies and the **Vessel** and the insurers of all **(Owners Group)** from and against any and all claims, demands or causes of action, including but not limited to personal injury or death of any employees, invitees, agents or representatives of **Charterer** (including **Charterer's** subsidiary, affiliated and related companies), its contractors and subcontractors of all tiers and third party towers and any other third party or person(**"Charterers Group"**) and any and all property damage (including damage to **Vessel**), cargo, pollution or environmental damages or losses of any person, party or **Vessel**, including but not limited to **Charterers Group**, and regardless of whether or not any such claims, demands or causes of action shall arise from or be caused by, in whole or in part, the sole or partial negligence or fault of **Owners Group**, strict liability or unseaworthiness of **Vessel**.

## 13.   FINANCIAL RESPONSIBILITY

**Charterer** shall procure evidence of financial responsibility demonstrating **Charterer's** ability to meet the liability to the United States of America and the separate states thereof which may result from the discharge of pollutants into or upon the navigable waters or air of the United States, adjoining shoreline or into or upon the waters or lands of the contiguous zone. Notwithstanding any other terms, conditions or exceptions contained in this Bareboat Charter Agreement, **Charterer** agrees that for the duration of or even after the termination of this Bareboat Charter

Agreement, it shall be deemed the operator of the **Vessel** for the purposes of compliance with all pollution regulations during its charter of the **Vessel** and further agrees to save and hold harmless and indemnify **Owner** and **Owners Group** against any and all loss due to any and all civil fines, claims, cleanup, proceedings or actions with respect to said pollution regulations brought about from use of the **Vessel** during the Charter period(s).

**Charterer** is mindful of OPA 90 and the responsibilities and obligations that might be imposed on **Owner** as the **Owner** of the **Vessel** and should there be a spill or environmental discharge for any reason from the **Vessel** during the operation and use of the barge by **Charterer** during the Charter period, **Charterer** accepts responsibility for all costs and expenses incurred by **Owner** and **Owners Group** to contain or clean up the spill or environmental discharge and **Charterer** further accepts responsibility for third party damages caused by any spill or environmental discharge during its operation and use of the **Vessel** pursuant to this Barge Charter Agreement.  **Charterer** shall indemnify and reimburse **Owner** for any funds and expenses expended by **Owner** and **Owners Group** as a result of a spill or environmental discharge while **Charterer** is operating or using this **Vessel** pursuant to this Agreement. **Charterer** shall indemnify and reimburse **Owner** and **Owners Group** for any funds and expenses expended by **Owner** and **Owners Group** as a result of a spill or environmental discharge while **Charterer** is operating or using this **Vessel** pursuant to this Agreement, even if alleged or caused in whole or in part, due to any negligence or fault of **Owner** and **Owners Group,** strict liability or unseaworthiness of **Vessel.**

14.     **CLEANING**

This **Vessel** shall be presented suitable to load #2 diesel.  **Vessel** to be redelivered to **Owner** in a gas free condition suitable to load #2 diesel. Suitability and acceptance of all cleaning at redelivery shall be determined and acceptable to both **Owner** and an independent cargo inspector acceptable to both parties and should a dispute arise, all costs to settle the dispute to be for the account of **Charterer,** all the expert costs, attorney fees and the cost to make the **Vessel** suitable for redelivery. Charter Hire will continue until **Vessel** is suitable for redelivery.

15.     **QUIET ENJOYMENT**

**Owner** agrees that it shall not allow, suffer or permit to be imposed on the **Vessel** any lien or charge which in any way interferes with the rights of **Charterer** under this Agreement.

## 16.    SEVERABILITY

In the event that any provision of this Agreement shall be deemed or found to be invalid, void or unenforceable, such finding shall be construed to render any other provision of this Agreement either invalid, void or unenforceable, and all other provisions shall remain in full force and effect unless the provisions which are invalid, void or unenforceable shall substantially affect the rights or obligations granted to or undertaken by either party. Should this Agreement be found or deemed invalid, void or unenforceable for any reason whatsoever then this Agreement shall terminate at that time, the Vessel shall be redelivered to the Owner and neither party shall have any obligation to perform in the future under this Agreement but Charterer shall still remain responsible for Vessel Charter Hire, repair of damages, re-delivery obligations and whatever future obligations Charterer may have to Owner under this Agreement.

## 17.    ASSIGNMENT

Neither Charterer nor Owner shall have the right to assign this Bareboat Charter to any other individual, company or entity without first obtaining the written approval of the other party.

## 18.    NOTICE OF DEFAULT

If at any time after the delivery of said Vessel to Charterer hereunder, Charterer shall default in the payment of Charter Hire or fail to perform any of the duties or obligations assumed hereunder, or violate any of the provisions of this Agreement or file for Chapter 11 or Chapter 7 of the Bankruptcy laws, or if Charterer shall be adjudged a bankrupt or have filed a Petition in bankruptcy against it, Charterer shall be considered to be in breach of and in default of the Agreement and Owner may, without prejudice to any other rights it may have under this Agreement, including the right to enforce any legal rights it may have under this Agreement, cancel this Agreement and withdraw and retake the Vessel, wherever same may be found, whether on the high seas or in any port, harbor or other place, and without prior demand and without legal process, and for that purpose Owner may enter upon any dock, pier or other premises where the Vessel may be  and may take possession thereof; further, regardless of the actions taken by Owner, Owner will maintain any and all rights or causes of action it may have against Charterer under the terms, conditions and obligations, imposed upon Charterer in this Agreement.

**19.     THIRD PARTY TOWERS, ETC.**

**Charterer** shall cause and does warrant that all third party towers, contractors or subcontractors will name and waive **Owner** and **Owners Group** and the Vessel in their policies of insurance — all deductibles for the account of third party. **Charterer** shall have any aforementioned third party accept and be bound by the terms and conditions of this Agreement.

**20.     GOVERNING LAW**

This Barge Charter Agreement and the rights and obligations of the Parties hereunder shall be construed in accordance with and be governed by the General Maritime law of the United States and if not under the General Maritime law, then under the laws of the State of Louisiana.

**21.     ATTORNEY FEES**

Should any party to this Agreement have to retain an attorney to enforce any of its rights against any other party for breach of obligations under this Agreement, the prevailing party shall be entitled to reasonable attorney fees and costs against the party or parties in breach; also, including any and all reasonable attorney fees and costs incurred in pursuing and prevailing in a claim by **Owners Group** for indemnity under this agreement.

**M.B. BARGE COMPANY, INC.**

By: _CHRIS GONSULEN_
Its Authorized Representative
Name: _CHRIS GONSULEN_

Title: _PRESIDENT_

Date: _12/23/2011_

**KUDZU MARINE, INC.**

By: _Robert J Tompkins_
Its Authorized Representative
Name: _Robert J. Tompkins Jr._

Title: _President_

Date: _19 DEC 2011_

## EXHIBIT  A

## CERTIFICATE OF DELIVERY AND ACCEPTANCE

MB Barge Co. Inc, a Florida corporation, hereinafter called "Owner", and Kudzu Marine, Inc., hereinafter called "Charterer",

DO HEREBY CERTIFY

(1)   that at_____ *1200*_____ hours CST, on the ___ *15th* ___ day of December 2011  which such vessel was afloat at ___ *Eagles Landing,* ___ *Kudzu Fleet, Chickasaw* ___, Al., and Owner delivered and Charterer accepted from Owner the tank barge MB-3 Official # 288850, hereinafter called the "Vessel",  pursuant to the terms and conditions of the BAREBOAT CHARTER AGREEMENT, dated December___ *19* ___, 2011.

For the Owner:  MB Barge Co., Inc.

By: Chris Gonsoulin

By: _____

Its Duly Authorized Representative

Witness Name: *TRACY GONSOULIN*

For the Charterer:  Kudzu Marine, Inc.

By: _____

By: _____

Its Duly Authorized Representative

Name: *Robert J. Tompkins Jr.*

Witness Name: *Diana Higgins*

Title: *President*